IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH PEREZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL, | : | |
| Commissioner of Social Security | : | NO. 19-2825 |

### MEMORANDUM OF DECISION

THOMAS J. RUETER
United States Magistrate Judge                                    June 17, 2020

        Plaintiff, Joseph Perez, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").

        Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br."), and plaintiff filed a reply thereto ("Pl.'s Reply").  For the reasons set forth below, the plaintiff's Request for Review will be **GRANTED** to the extent that the case will be remanded for further proceedings.

### I.      FACTUAL AND PROCEDURAL HISTORY

        Plaintiff filed an application for SSI on July 19, 2013, alleging disability beginning December 14, 2007.  (R. 145-53.)  Plaintiff's claim was denied initially; he then filed a request for a hearing.  (R. 65-91.)  A hearing was held on July 22, 2015, before Administrative Law Judge ("ALJ") Jennifer M. Lash.  (R. 44-64.)  Plaintiff, represented by counsel, appeared and testified.  A vocational expert ("VE") also testified.  At the administrative hearing, plaintiff amended his alleged onset date to May 17, 2013.  See R. 48.  In a decision dated September 16,

2015, the ALJ found that plaintiff was not disabled under the Act.  (R. 21-40.)  Plaintiff filed a request for review of the ALJ's decision that was denied by the Appeals Council and the ALJ's decision became the final decision of the Commissioner.  (R. 1-7, 19-20.)  Plaintiff subsequently sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) in this court.  After the Commissioner filed an uncontested motion for remand, on October 10, 2017, the court remanded the case for further administrative proceedings.  (R. 625.)  The Appeals Council issued a remand order on April 13, 2018, that vacated the final decision of the Commissioner and specified the issues to be considered on remand.  See R. 628-31.

On remand, ALJ Lash held an additional administrative hearing on October 19, 2018.  See R. 570-83.  Plaintiff's counsel and a VE testified at the hearing, but plaintiff was not in attendance as he was treated in the emergency room the night before.  (R. 575.)  In a decision dated March 13, 2019, the ALJ again found that plaintiff was not disabled under the Act.  (R. 546-69.)  The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity from May 17, 2013, through April 24, 2017 (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: schizophrenia, affective disorder, anxiety disorder, neurodevelopmental disorder, and substance abuse disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, I find that, from May 17, 2013, through April 24, 2017, the claimant had the residual functional capacity to perform a full range of work at all exertion all levels but with the following nonexertional limitations: the claimant is limited to unskilled work with detailed, but uninvolved written or oral instructions with a reasoning level of 2 or less, no public interaction, and no more than occasional interaction with co-workers and supervisors.

      5.      The claimant was capable of performing past relevant work as a construction worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

      6.      The claimant was not been [sic] under a disability, as defined in the Social Security Act, from May 17, 2013, through April 24, 2017 (20 CFR 416.920(g)).

(R. 15-31.)[1] Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S. 1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial

---

[1]    In the interim, plaintiff filed a subsequent application for SSI benefits on April 25, 2017; plaintiff was found disabled as of this date. See R. 622, 630, 701-06. In her decision denying benefits after remand, ALJ Lash explained that she did not find a basis for reopening or revising the subsequent disability determination and limited her decision to the period prior to April 25, 2017. See R. 553.

evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 1382c(a)(3)(H)(i).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 416.920.[2] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 201 (3d Cir. 2019).

---

[2] For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on March 13, 2019.

### III.    BACKGROUND

At the outset of the July 22, 2015 administrative hearing, plaintiff's counsel informed the ALJ that plaintiff wanted to amend his alleged onset date to May 17, 2013. (R. 48.) Counsel also noted that during the relevant time period, plaintiff was over fifty-five years old. Id. Counsel further explained that plaintiff was homeless for several years and, as a result, did not have an extensive medical treatment history. (R. 49.)

Plaintiff testified with the assistance of a Spanish language interpreter. (R. 46.) At the time of the administrative hearing, plaintiff was fifty-nine years old. (R. 50.) Plaintiff indicated that he was not married, but lived with a friend. (R. 51.) Plaintiff did not have a driver's license; he either utilized public transportation or was driven to appointments by his friend. Id. Plaintiff attended high school in New Jersey until the tenth grade; he explained that he "speak[s] English, a little" but that he does not read or write English.[3] Id. Plaintiff indicated that he had no income since May 2013, but had health insurance for approximately five years through "welfare." (R. 51-52.)

With respect to his work history, plaintiff testified that he last worked as a laborer in construction. (R. 53-54.) Plaintiff described his work duties as, "[d]emolishing for all the houses that we were going to fix, pour cement. Putting on cinder blocks for expenses [sic]. Fixing up basements so we could put up the walls, that's where I got the injury where I got the hernia." Id. When asked why he is unable to work, plaintiff stated, "[w]hen I work on a — doing very heavy stuff, I cannot bend down because I cannot get back up because my back becomes like very stiff. And also, I can get very heavy headaches and I forget things, I don't

---

[3]   When asked whether he was taught English in school, plaintiff explained that he received English lessons, but that he "had a lot of problems and I got suspended and they didn't take me back." (R. 58.)

5

know where I put my tools and I have to lay down." (R. 54.) As a laborer, plaintiff was required to lift more than 100 pounds and spent the day walking and standing. (R. 56.) Plaintiff was prescribed pain medication for back pain and participated in physical therapy "many years ago." (R. 54.) Plaintiff could not recall the last time he was treated by a doctor for his back impairment, although he had an upcoming appointment. (R. 55.)

With respect to his mental health treatment, plaintiff indicated that he received treatment at Northeast Community Mental Health, meeting with a doctor on a monthly basis and meeting with a therapist on a weekly basis. Id. Plaintiff also testified that he suffered from insomnia and experienced nightmares. (R. 52.) When asked with whom he socialized, plaintiff indicated that he socialized with no one and that he did not speak with his family because "most of [his] family is dead." Id. Plaintiff had a history of auditory and visual hallucinations. (R. 57.) He explained that the hallucinations were ongoing. For example, he experienced them twice the week prior to the administrative hearing. Id. Plaintiff also experienced panic attacks of varying frequency, which sometimes rendered him unable to leave the house. Id.

In response to questioning by plaintiff's counsel, plaintiff stated that in addition to health insurance through welfare, plaintiff also received food stamps. (R. 56.) The friend with whom he lived managed the food stamps for plaintiff because he required assistance. Id. Plaintiff testified that he did not leave the house and did not participate in household chores such as cooking and cleaning. Id. Plaintiff explained that he did not see his primary care physician between 2013 and 2015 because "[a]round that time I was in a house where there is people like me, like they are homeless." (R. 57.)

The ALJ queried the VE regarding plaintiff's past work and posed several hypothetical questions to the VE. (R. 58-60.) In response, the VE identified several occupations

6

that would be available for the hypothetical individual. (R. 59-60.) Plaintiff's counsel had an opportunity to question the VE as well. (R. 60-62.) After agreeing to hold the administrative record open for a time for the submission of additional medical records, the ALJ adjourned the hearing. (R. 62-63.)

As noted supra, after the case was remanded, ALJ Lash held a second administrative hearing on October 19, 2018. (R. 570-83.) Plaintiff did not appear at this hearing. Counsel informed the ALJ that plaintiff was aware of the administrative hearing, but that plaintiff was in the emergency room the prior day, although counsel did not know if plaintiff had been admitted or discharged from the hospital. (R. 574.) The ALJ instructed counsel to seek an explanation for plaintiff's absence and discussed with counsel the admission of additional medical records. See R. 570-76.

The ALJ also heard the testimony of VE Christina Beatty-Cody. See R. 578-82. The VE testified that plaintiff's past work as a construction worker is classified by the Dictionary of Occupational Titles ("DOT") as very heavy work. (R. 578.) The ALJ asked the VE to consider a hypothetical individual of plaintiff's age, education, and work history, who is able to perform work at all exertional levels, but who is "limited to unskilled work with detailed but uninvolved written or oral instructions. With a reasoning level of 2 or less. No public interaction. And no more than occasional interaction with coworkers and supervisors." (R. 578-79.) The VE opined that such individual could perform plaintiff's past work and confirmed that such testimony was consistent with the DOT. (R. 579.)

Plaintiff's counsel then questioned the VE at length. In response, the VE confirmed that the work described in the ALJ's hypothetical is not performed in social isolation. Id. The VE also confirmed that if the hypothetical individual's impairments caused him to be

off-task for fifteen to twenty percent of the time, the hypothetical individual would be precluded from performing such work. (R. 580.) The VE further confirmed that if the hypothetical individual were limited to "no more than very short and simple instructions, that would preclude the ability to carry out detailed written and oral instructions." Id. Additionally, the VE confirmed that if the individual were limited such that he could sit for six hours and stand for two hours in an eight-hour workday, such individual would be limited to "no more than light to sedentary work." (R. 580-81.) Moreover, the VE opined that if the individual were limited such that he could only lift up to ten pounds on a frequent basis, and could stand for no more than four hours in an eight-hour workday, the individual would be limited to a sedentary or a significantly reduced light occupational base. (R. 581.)[4] After announcing that the record would be kept open for the submission of additional medical records, the ALJ adjourned the hearing. (R. 582-83.)

## IV. DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments, but the impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 555-58.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with nonexertional limitations as detailed in her decision.

---

[4] The VE also acknowledged that if the individual had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and complete a normal workday and workweek without interruptions, such individual would be precluded from all competitive work. (R. 581.) Furthermore, the VE opined that if the individual had serious limitations in his ability to deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, and had no useful ability to demonstrate reliability and use judgment, such individual would not be capable of performing competitive work. (R. 581-82.) Similarly, if the individual were to miss three or more days of work due to his symptomology, he would be precluded from competitive work. (R. 582.)

See R. 558. Plaintiff presently contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff argues that, upon remand, the ALJ failed to reassess plaintiff's education level and ability to communicate in English as directed by the Appeals Council and also that the ALJ erred in evaluating the opinion evidence. (Pl.'s Br. at 7-18; Pl.'s Reply at 1-5.) Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 6-30.)

### A.     Consideration of Opinion Evidence

Plaintiff asserts that the ALJ committed a series of legal errors in evaluating the opinion evidence and formulating plaintiff's RFC. (Pl.'s Br. at 2-18; Pl.'s Reply at 1-4.) RFC refers to the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a claimant's description of his own symptoms. The final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. § 416.927(d).[5]

Pursuant to the regulations in effect at the time of the ALJ's decision, an ALJ must give medical opinions the weight she deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 416.927. An ALJ shall "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). The regulations provide that an ALJ shall give a treating

---

[5]     The court notes that 20 C.F.R. § 416.927, rather than 20 C.F.R. § 416.920c, applies because plaintiff's claim was filed before March 27, 2017.

physician's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429). That is, a treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion based upon her own credibility judgments, speculation, or lay opinion. Morales, 225 F.3d at 317.

In the case at bar, the ALJ determined that during the relevant time period plaintiff could return to his past "very heavy" work as a construction worker because plaintiff retained the RFC to perform a full range of work at all exertional levels, with additional nonexertional limitations.[6] (R. 558.) In a detailed decision, the ALJ analyzed the evidence of record pertaining to plaintiff's claimed limitations, including a Function Report completed by plaintiff in connection with his application for benefits; plaintiff's testimony at the July 2015 administrative hearing; treatment records pertaining to plaintiff's physical and mental impairments; the August 21, 2013 opinion of the State agency psychological consultant, Melissa Diorio, Psy.D.; the August 10, 2015 medical assessment of treating therapist, Manuel Custodio, M.A.; the GAF scores found in the record; the October 16, 2013 opinion of State agency medical reviewer Louis Tedesco, M.D.; the August 6, 2015 opinion of Juliette Louis-Charles, D.O, a

---

[6] "Very heavy" work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light, and sedentary work." 20 C.F.R. § 416.967(e).

treating physician; and the October 2, 2013 opinion of consulting examiner Arturo Ferreira, M.D. (R. 558-62.) Plaintiff presently contends that in analyzing his RFC, however, the ALJ failed to give deference to the medical opinions of record which establish that plaintiff is unable to work due to physical and mental impairments.

Although the final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner, see 20 C.F.R. § 416.927(d), the court agrees that here, the ALJ's RFC analysis is not supported by substantial evidence. With respect to the opinion evidence pertaining to plaintiff's physical impairments specifically, the ALJ considered the assessment of State agency medical reviewer Dr. Tedesco, the opinion of treating physician Dr. Louis-Charles, and the assessment of State agency medical reviewer Dr. Ferreira. See R. 561-62. With respect to Dr. Tedesco's October 2013 conclusion that plaintiff had no medically determinable impairment as lumbar imaging and physical examinations were essentially normal, the ALJ attributed the opinion very little weight, reasoning that "the medical records show[] X-ray findings from 2016 that confirm a disorder of the claimant's back. <u>However, it only shows mild degenerative changes and no acute fractures; no soft tissue abnormalities; and no bony retropulsion in the spinal canal</u>." See R. 561 (emphasis added). Similarly, the ALJ attributed very little weight to the opinions of Drs. Louis-Charles and Ferreira.[7] After listing the

---

[7] The record contains treatment notes dated 2010 to 2012 of treating physician Dr. Louis-Charles of Cambria Family Practice. See R. 213-22, 268-75. In a Medical Source Statement – Physical, dated August 6, 2015, Dr. Louis-Charles listed plaintiff's diagnoses as lumbar degenerative joint disease, depression, inguinal hernia, and anorexia. (R. 536.) Dr. Louis-Charles opined that plaintiff can sit and stand/walk less than two hours total in an eight-hour workday. Id. She further opined that plaintiff requires a job that permits shifting positions at will from sitting, standing, or walking, and that plaintiff would need to take unscheduled breaks during the workday. Id. In addition, Dr. Louis-Charles indicated that plaintiff could occasionally lift and carry less than ten pounds, could rarely crouch or climb stairs, and could never stoop (bend), twist, or kneel. (R. 537.) According to Dr. Louis-Charles, plaintiff has significant limitations in reaching, handling, and fingering because he "has a lot of pain." Id.

11

limitations set forth in those opinions, the ALJ again reasoned that the restrictive limitations attributed by Drs. Louis-Charles and Ferreira are not supported by clinical and diagnostic findings and were inconsistent with the medical record. (R. 562.) With respect to each opinion, the ALJ again relied on the 2016 imaging studies to discount the opinions, indicating that such testing demonstrated <u>mild degenerative changes, no acute fractures, no soft tissue abnormalities and no bony retropulsion in the spinal canal</u>. Id. (emphasis added).

---

Furthermore, Dr. Louis-Charles opined that plaintiff would be off-task ten percent of a workday because his symptoms would likely be severe enough to interfere with attention and concentration needed to perform even simple work tasks. Id. Dr. Louis-Charles also opined that plaintiff would likely have "good" days and "bad" days, would likely be absent from work more than four days per month as a result of his impairments or treatment, and could never tolerate temperature extremes, dust, humidity, heights or moving machinery, or fumes, odors, or chemicals. (R. 538.) Dr. Louis-Charles also noted that plaintiff's symptoms were reasonably consistent with the diagnoses listed in the opinion and that plaintiff's impairments could be expected to last for a continuous period of at least twelve months. Id. In support of her opinion, Dr. Louis-Charles offered the following explanation: "prognosis poor for full recovery to achieve gainful employment. Patient has severe symptoms of musculoskeletal nature limiting him in function and endurance in not only a work setting but at/in home environment." (R. 539.)

      On October 2, 2013, Dr. Ferreira conducted a disability evaluation in connection with plaintiff's application for benefits. (R. 253-67.) After a physical examination, Dr. Ferreira opined that plaintiff could continuously lift up to ten pounds, frequently lift up to twenty pounds, and occasionally lift up to fifty pounds. (R. 258.) He also opined that plaintiff could frequently carry up to ten pounds and occasionally carry up to twenty pounds. Id. Dr. Ferreira imposed these limitations due to plaintiff's inguinal hernia and depression. Id. In addition, Dr. Ferreira opined that plaintiff could sit for two hours at one time without interruption, stand for one hour without interruption, and walk for one hour without interruption. (R. 259.) He also indicated that plaintiff could sit for a total of six hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for two hours in an eight-hour workday. Id. Dr. Ferreira imposed no limitations on plaintiff's ability to use his hands. (R. 260.) With respect to postural activities, Dr. Ferreira opined that plaintiff could occasionally climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (R. 261.) With respect to environmental limitations, Dr. Ferreira indicated that plaintiff should never be exposed to unprotected heights due to anxiety, depression, and psychotropics, and should never be exposed to moving mechanical parts, or dust, odors, fumes, and pulmonary irritants, and should never operate a motor vehicle. (R. 262.) He further opined that plaintiff could frequently be exposed to humidity, wetness, and loud noise, and that plaintiff could occasionally be exposed to extreme cold, extreme heat, and vibrations. Id.

12

However, in contrast to the ALJ's findings, a review of the 2016 studies which were generated when plaintiff sought treatment after a fall, reflects that plaintiff was found to have an acute L2 compression fracture. See R. 794-98. X-rays of the lumbo-sacral spine showed no acute fracture or traumatic listhesis, no acute soft tissue abnormalities, and mild multilevel degenerative endplate changes. (R. 797.) However, x-rays of the lumbar spine were compared to prior March 2012 studies, and "demonstrated a compression fracture of the L2 vertebral body with loss of approximately 25% vertebral body height." Id. It also was noted that there was no clear evidence of bony retropulsion into the spinal canal, and that there were mild multilevel degenerative changes of the lumbar spine. Id. A CT scan of the lumbosacral spine showed further detail, indicating the following:

> There is an acute compression fracture of the L2 vertebral body with loss of approximately 25% vertebral body height superiorly. There is a small anteriorly displaced fragment. There is also minimal retropulsion of the posterior superior endplate without significant canal stenosis. No evidence of an additional acute fracture. No evidence of a traumatic listhesis.
>
> No evidence of a significant paravertebral hematoma. No acute soft tissue abnormalities
>
> There are minimal degenerative changes without evidence of a high-grade foraminal or canal stenosis throughout the lumbar spine. Evaluation of the cord and canal is limited on CT with respect to MRI.

(R. 798.) Thus, the CT scan of the lumbosacral spine demonstrates that the ALJ's assertions that the 2016 imaging shows no acute fractures and no retropulsion in the spinal canal are factually inaccurate. Although defendant offers an explanation for this conflict between the ALJ's analysis and the record evidence, see Def.'s Br. at 14 n.11, the ALJ did not.

The April 2016 studies of the lumbo-sacral spine fall within the relevant time period of May 17, 2013 to April 24, 2017 and are pertinent to plaintiff's claimed limitations. This court is cognizant of the fact that there is "no requirement that the ALJ discuss in its opinion

13

every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) (not precedential), and that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008)). However, an ALJ may not "'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing Morales, 225 F.3d at 318 (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence)).

Additionally, case law guides that an ALJ "may not reject pertinent or probative evidence without explanation." Johnson, 529 F.3d at 204. The ALJ must provide not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id. See also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").

While the ALJ was not required to adopt each restriction noted in the various opinions, the ALJ was required to evaluate the opinion evidence in accordance with the proper standards. The opinions of Drs. Louis-Charles and Ferreira lend credence to plaintiff's claims of greater limitations than that imposed by the ALJ in the RFC assessment. However, the ALJ's proffered reason for discounting this opinion evidence was based on a mischaracterization of the

evidence. As such, the court cannot find that substantial evidence supports the ALJ's decision. The substantial evidence test is not satisfied if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). See also Nazario v. Comm'r Soc. Sec., 2019 WL 6170820, at *4 (3d Cir. Nov. 20, 2019) (not precedential) (same). Accordingly, the case will be remanded for further proceedings to properly consider the evidence relating to plaintiff's claimed physical impairments during the relevant time period. See Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008) (finding that substantial evidence did not support the ALJ's decision because ALJ's rejection of treating physician opinion was based on erroneous factual assertion and mischaracterization of the evidence).

The court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr., 806 F.2d at 1190-91. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2012) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). See also Cortes v. Comm'r of Soc. Sec., 255 F. App'x 646, 653 (3d Cir. 2007) (not precedential) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting S.E.C. v. Chenery Corp., 318 U.S. 80, 87 (1943)); Clinkscales o/b/o T.S. v. Colvin, 232 F. Supp. 3d 725, 735-36 (E.D. Pa. 2017) (same). Furthermore, it is impermissible for the court to rectify errors made by an ALJ by making an independent analysis and relying

upon information that was not relied upon by the ALJ. Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

If the ALJ again determines that during the relevant time period plaintiff retained the RFC to perform the full range of work at all exertional levels with certain nonexertional limitations, she must provide an adequate basis for that determination. Upon remand, the Commissioner may well reach the same conclusion; however, in the absence of sufficient indication that the Commissioner considered all of the evidence in the case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision. See Terwilliger v. Chater, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding case in the absence of sufficient indication that the Commissioner considered all of the evidence).

Plaintiff also presents several allegations of error with respect to the ALJ's treatment of the opinions that pertain to plaintiff's mental health impairments. See Pl.'s Br. at 15-18. Plaintiff first avers at the ALJ failed to accommodate all of the limitations offered by State agency medical reviewer Dr. Diorio in her August 2013 opinion. Plaintiff contends that Dr. Diorio opined that plaintiff could carry out only "very short and simple instructions," but that the VE testified that an individual with such a limitation could not understand, remember, and carry out detailed written or oral instructions. See R. 71, 580. According to plaintiff, the ALJ's RFC finding that plaintiff is limited to "unskilled work with detailed, but uninvolved written or oral instructions with a reasoning level of 2 or less" is directly contrary to Dr. Diorio's limitation to "very short and simple instructions." (Pl.'s Br. at 15.) Moreover, plaintiff asserts that the ALJ erred by failing to give deference to the opinion of Mr. Custodio, plaintiff's therapist. He further contends that the therapist's progress notes have consistently documented the symptoms cited by

16

Mr. Custodio in his assessment. Additionally, plaintiff argues that the ALJ erred by dismissing the GAF ratings offered by treating and examining sources in cursory fashion.

As discussed supra, the ALJ failed to consider all of the relevant evidence pertaining to plaintiff's exertional limitations. Such failure may have impacted the ALJ's consideration of the opinion evidence pertaining to plaintiff's mental health impairments. Reconsideration of the evidence pertaining to the physical aspects of plaintiff's RFC on remand will necessarily require an evaluation of the evidence as a whole. Therefore, given the court's determination that the case will be remanded, the court will not address this claim in detail. The court notes however, that defendant correctly points out that contrary to plaintiff's assertion, the ALJ was not required to accord Mr. Custodio's opinion controlling weight. Mr. Custodio is a therapist. Social Security regulations in effect at the time of the ALJ's March 2019 decision define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 CFR § 416.927(a)(1). Only "acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to controlling weight. See 20 C.F.R. §§ 416.927(a)(2), (c)(2). The regulations do not include therapists in the list of "acceptable medical sources." See 20 C.F.R. § 416.902(a)(1)-(8).[8] Thus, contrary to plaintiff's assertion, Mr. Custodio's opinion is not entitled to the deference afforded treating physicians under the Commissioner's regulations

---

[8] The regulations define "acceptable medical source" as a "medical source" who is a (1) licensed physician; (2) licensed psychologist; (3) licensed optometrist; (4) licensed podiatrist; (5) qualified speech-language pathologist; (6) licensed audiologist; (7) licensed advanced practice registered nurse, or (8) licensed physician assistant. See 20 C.F.R. § 416.902(a)(1)-(8). The court notes that the regulations were amended effective March 27, 2017, such that certain definitions of "medical source" only pertain to claims filed after March 27, 2017. Such amendments are not relevant to the case at bar, however.

and recognized by case law. Nevertheless, even if Mr. Custodio is not an acceptable medical source, his opinion is relevant to the determination of the severity of plaintiff's impairments. The regulations provide that information from "medical sources" who are not "acceptable medical sources" are also considered. See 20 C.F.R. § 416.927(f). Indeed, the ALJ considered Mr. Custodio's opinion in her analysis. However, once again, the ALJ must consider the evidence in accordance with the appropriate standards, addressing conflicting evidence and accurately characterizing the evidence. See Kent, 710 F.2d at 114; Brownawell, 554 F.3d at 357.[9] The court notes that upon remand, if the ALJ again determines to accord the opinions less than full weight, she must provide an adequate basis for her determination.

### B. Plaintiff's Ability to Communicate in English

In the September 16, 2015 decision, the ALJ concluded that plaintiff was not disabled under the Act. See R. 21-40. In her decision, the ALJ found that plaintiff had the RFC to perform medium work, except that he was limited to "unskilled work with routine, repetitive

---

[9] It is unclear from the ALJ's analysis in the case at bar whether the appropriate standards were met with respect to Dr. Diorio's opinion. For example, the ALJ indicated that she attributed great weight to Dr. Diorio's opinion, but certain factors cited by the ALJ to justify the RFC based on this opinion undermine the ALJ's analysis. With respect to Dr. Diorio's opinion, the ALJ indicated her RFC analysis was supported by this opinion in part by the evidence of "good or fair memory" in the record. That is, the ALJ reasoned: "I assign significant weight to this opinion as it is consistent with the medical record as a whole. The opinion cites moderate limitations in the claimant's ability to make decisions and understand instructions, as well as moderate limitations in social functioning. This is supported by the medical record showing that the claimant has a good or fair memory (Exhibit C3F/22; C6F/3)." (R. 560.) In fact, at step three of the sequential analysis when considering plaintiff's ability to understand, remember, or apply information, the ALJ found that plaintiff had moderate limitations in the area, reasoning that "[a]t examinations, the claimant's memory has been noted as impaired on one occasion (Exhibit C8F/14). However, at other examinations, the claimant had either a good or fair memory (Exhibit C3F/22; C6F/3). There is no other evidence in the medical record that shows an impaired memory." (R. 556.) However, this statement is inaccurate, as the record reveals that a September 16, 2013 treatment note of John Reitano, M.D., of Northeast Community Health Centers, Inc., specifically notes, inter alia, "memory deficit." (R. 510.) Moreover, Mr. Custodio also noted problems with memory and concentration in his opinion. See R. 545.

tasks with no public interaction, occasional interaction with co-workers and supervisors, and no communication in English." (R. 32.) As noted supra, after filing a request for review of the ALJ's decision that was denied by the Appeals Council, plaintiff sought judicial review of the Commissioner's decision. (R. 1-7, 19-20.) The Commissioner filed an uncontested motion for remand and the court remanded the case for further administrative proceedings. (R. 625.) On April 13, 2018, the Appeals Council issued a remand Order that specified the issues to be considered on remand. See R. 628-31. In this Order, the Appeals Council specifically directed the ALJ to "[r]eassess the claimant's educational level and his ability to communicate in English." (R. 629.)

In the March 13, 2019 decision, the ALJ again determined that plaintiff was not disabled under the Act during the relevant time period. Plaintiff presently argues that in this decision, the ALJ erred because she did not reassess plaintiff's educational level and ability to communicate in English as directed by the Appeals Council in the remand Order. (Pl.'s Br. at 7-11.) Plaintiff points out that the ALJ's decision is "entirely silent on this issue." Id. at 7. Defendant counters that the ALJ considered plaintiff's claim on remand de novo and determined in the March 2019 decision that plaintiff was not disabled at step four, not step five, of the sequential evaluation process. (Def.'s Br. at 6-11.) According to defendant, because the ALJ ended her analysis at step four, it was unnecessary for her to consider the vocational factors referenced by plaintiff. See id. at 6.

The court already has determined supra that the ALJ's analysis is incomplete and warrants further consideration. A remand may produce different results on plaintiff's application, making discussion of this claim moot. See Steininger v. Barnhart, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (concluding that the ALJ's hypothetical was deficient

and the vocational expert's answer to it does not constitute substantial evidence for the ALJ's decision and declining to address plaintiff's other arguments for remand, "as the ALJ's findings may be revised in any decision issued following the new hearing"). See also LaSalle v. Comm'r of Soc. Sec., 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011) (remanding for the ALJ's failure to consider and analyze all relevant medical evidence regarding plaintiff's mental impairments and declining to examine plaintiff's additional claims because a "remand may produce different results on these claims, making discussion of them moot"); Nieves v. Astrue, 2010 WL 629831, at *7 (E.D. Pa. Feb. 19, 2010) (same); Watson v. Astrue, 2009 WL 678717, at *6 (E.D. Pa. Mar. 13, 2009) (declining to address plaintiff's remaining claims "until the basis for the ALJ's ruling is clarified through remand"). As such, the court will not address this claim.

## V.    CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, plaintiff's Request for Review will be granted to the extent that the matter is remanded for further proceedings consistent with this opinion.

An appropriate Order accompanies this opinion.

BY THE COURT:


\_\_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge